UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

-----------------------------------------------------------------------X

IN THE MATTER OF ROEN SALVAGE COMPANY AS OWNER OF THE CREW BOAT MONARK #2 PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY IN THE GROUNDING AND CAPSIZING OF THE CREW BOAT MONARK #2 AND DEATH OF DONALD JAMES SARTER IN LAKE SUPERIOR ON SEPTEMBER 30, 2019

Case No.: _____

**IN ADMIRALTY**

-----------------------------------------------------------------------X

## COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY

NOW INTO COURT, through the undersigned counsel, comes ROEN SALVAGE COMPANY (referred hereto as "Roen') as owner of the Crew Boat Monark #2, and petitions for exoneration from or limitation of liability, civil and maritime, pursuant to Federal Rule of Civil Procedure 9(h), Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims, the Local Rules of Practice for the United States District Court for the Eastern District of Wisconsin and 46 U.S.C. § 30501, *et seq.,* and alleges as follows:

1. At all material times, Petitioner was and is a duly organized corporation existing under the laws for the State of Wisconsin, with its principal place of business in Sturgeon Bay, Wisconsin. At all material times, Petitioner was and is the owner and operator of the Crew Boat Monark #2.

2. Crew Boat Monark 2 is a work boat, approximately 21 feet in length, and weighs approximately 1.8 gross tons. At all material times, the Crew Boat Monark #2 was fully and properly equipped and supplied, and in all respects seaworthy and fit for the services for which it was engaged. At all material times, the Crew Boat Monark #2

was properly operating in and around Lake Superior, in the vicinity of Superior, Wisconsin and Duluth Harbor, Minnesota.

3. On September 30, 2019, the Crew Boat Monark #2 was caused to founder, run aground, and capsize approximately 200-300 feet from the shore. The crew of three, including the Captain, Mr. Sarter, abandoned the vessel and commenced to swim ashore. All crew wore life jackets. Mr. Sarter, while swimming to shore, was overcome by the water and the weather and succumbed to drowning and/or a heart attack. Mr. Sarter's body was found on the beach shortly thereafter.

4. The events that give rise to this action occurred in Lake Superior in and around Superior, Wisconsin and Duluth Harbor, Minnesota. Lake Superior is a navigable body of water of the United States of America. Therefore, this Court has subject matter jurisdiction over this matter. 28 U.S.C. §1333.

5. Crew Boat Monark #2 is currently located in Sturgeon Bay, Wisconsin. The vessel has not been attached or arrested and a suit has not been commenced against its owner. The owner, Roen Salvage Company, is headquartered and has offices in Sturgeon Bay, Wisconsin. Therefore, the Eastern District of Wisconsin is the proper venue.

FACTS

**A.   The Incident**

6. At approximately 10 a.m. on September 30, 2019, at Mr. Sarter's direction, Mr. Donald Sarter, Mr. Randy Corsten, and Mr. Donald Slater embarked from Loon's Foot Boat Landing in Superior, Wisconsin on the Crew Boat Monark #2 ("Monark #2") in order to inspect a pipeline that was part of a dredging project being performed

by Roen Salvage Company adjacent to Duluth Harbor, in Lake Superior and near Hog Island. All decisions on that day's scope of work, including all navigation decisions and piloting commands, were made by Mr. Sarter. Mr. Sarter, Mr. Corsten, and Mr. Slater were employed by Roen. Mr. Sarter was the Project Superintendent and was Captain of the Monark #2 on the day of the incident.

7. After leaving Loon's Foot Boat Landing in Superior, Mr. Sarter navigated the vessel around Park Point into Lake Superior, heading northwest toward the area where the pipeline was located in the waters of Lake Superior. Mr. Sarter then maneuvered the Monark #2 close to shore (40 feet) in order to inspect the pipeline. However, at that moment the vessel was hit or "quartered" by a five foot wave. At that time Mr. Sarter turned the vessel back into the waves to maintain steerage and headed out toward open water. However, due to the water which had ingressed as a result of the wave the bilge pump was overwhelmed causing the engine to stall. The prop at that point was touching bottom. While in the process of restarting the engine the vessel was hit by another large wave and the vessel listed to starboard and then capsized. At that time the crew abandoned the vessel and began to swim to shore, which was 200-300 feet away.

8. All three men were wearing life vests when they abandoned the Monark #2. Mr. Slater and Mr. Corsten swam to shore safely. At some point they noticed that Mr. Sarter had drifted back out to open water. Once on the beach, Slater and Corsten radioed the Coast Guard and proceeded to watch for Mr. Sarter. Mr. Sarter's body washed onto the beach about 1000 feet from where Mr. Slater and Mr. Corsten had landed.

9. Although the estimated wave height was up to five feet on the day of the incident, there was no storm in progress. Mr. Sarter, who was in charge of both the project and the vessel, was an experienced mariner with appropriate licenses and many years of experience operating vessels on Lake Superior. The swamping of the vessel and the ultimate grounding and capsizing were caused by the decisions made by Mr. Sarter, who at all material times was in complete and in exclusive control of the vessel.

**B.** **The Claim of Mrs. Julie Sarter**

10. On December 19, 2019, Mrs. Julie Sarter ("Mrs. Sarter"), widow of the deceased, made a demand on Roen and/or its insurance carrier for the funeral expenses. This was followed up on December 23, 2019 by a demand for compensation that exceeded the value of the vessel.

**C.** **Petitioner is Entitled to Exoneration from fault or Limitation of Liability**

11. The facts described above concerning the claimed incident, and all claimed resultant losses or damages, were not caused by or contributed to by any fault, neglect, or negligence of Petitioner, or any person for whose acts Petitioner is responsible. Petitioner was not negligent or at fault, and has no responsibility, and is not liable for the damages claimed by Mrs. Sarter or any other claimant; the Monark #2 was seaworthy at all times, and said claimed damages were done, occasioned, or incurred by acts or events that occurred without the privity or knowledge, actual or imputed, of Petitioner, its managing agents or its managing officers.

12. Petitioner denies that it or any persons or property for whom or which it may be responsible are liable to any extent for Mrs. Sarter's or any other claimant's damages. Petitioner claims exoneration and exemption from all liability for all losses, damages,

and injuries occasioned or incurred, or alleged to have been occasioned or incurred by reason of the events described above, and from any and all claims by Mrs. Sarter or any claimant that may hereafter be made.

13. In the alternative, and in the event Petitioner should be held responsible because of these actions, Petitioner claims the benefits of the Limitation of Liability Act provisions set forth in §30501 through §30512, inclusive, of Title 46 of the United States Code, and all laws supplementary thereto and amendatory thereof.

14. The attached affidavit of Claudio Crivici, NAMS-CMS, describes the condition of the Monark #2 and his assessment of the value of the Monark #2 as of September 30, 2019. Petitioner offers and files herewith an *Ad Interim* security averring that the Monark #2 has a value of approximately $25,000.00. Petitioner is prepared to give security, bond, or stipulation for any amount in excess of the *Ad Interim* security as may be ascertained and determined to be necessary by order of this Court, the rules of this Court, and as provided by the laws of the United States.

15. Petitioner further specifically avers that the Complaint, and the claim for exoneration from or limitation of liability asserted herein, is filed not only on its behalf but also on behalf of its liability underwriters, who shall be entitled to exoneration from or limitation of liability to the same extent as Petitioner, and whose liability in the premises, if any, shall accordingly not exceed Petitioner's liability, if any.

**WHEREFORE,** Petitioner prays:

(1) That the Court enter an Order approving the *Ad Interim* security for the value of Crew Boat Monark #2;

(2) That the Court enter an Order directing the Clerk of Court to accept into the registry of the Court security as approved in the first instance, a letter of undertaking in acceptable form issued by Petitioner's insurer, representing the value of Crew Boat Monark #2, and six percent (6%) interest;

(3) That the Court enter an Order directing the Clerk of Court to accept into the registry of the Court the sum of $25,000.00 in lieu of filing a cost bond;

(4) That the Court issue notice to all persons asserting claims by reason of any loss, injury, expense or damages, occasioned or incurred by reason of the aforementioned incident, admonishing them to file their claims with the Clerk of the Court and to serve the attorneys for Petitioner a copy thereof on or before a date to be named in the notice, or forever be barred and permanently enjoined from making and filing any such claims;

(5) That the Court issue an injunction restricting the commencement or prosecution of any and all claims, actions, suits, or legal proceedings of any kind whatsoever against Crew Boat Monark #2, Petitioner, its property, its representatives, insurers, or its underwriters arising out of the aforementioned incident other than in the present action;

(6) That this Court adjudge that the Petitioner and Crew Boat Monark #2 are not liable for any loss, injury, expense or damage or claim whatsoever in consequence of the aforementioned incident;

(7) That in the alternative, if Petitioner is adjudged liable, that such liability be limited to the Petitioner's interest in the value of Crew Boat Monark #2 at the time of the incident and that

Petitioner be discharged therefrom upon the surrender of such interest, and that the money surrendered, paid, or secured as aforesaid to be divided pro-rata according to the above-mentioned statutes among such claimant(s) as may duly prove their claim saving to all parties any priorities to which they may be legally entitled, and that a decree may be entered discharging Petitioner from all further liability; and

(8) That this Court grant such other and further relief as the Court deems just and proper, together with interest, attorneys' fees, costs and disbursements in connection with this matter.

Dated: Chicago, Illinois
June 17, 2020

LEWIS BRISBOIS BISGAARD & SMITH LLP

/s/ Ruth E. Goldwater McCoy
By: Ruth E. Goldwater McCoy, Esq. (1113531)
550 W Adams Street, #300
Chicago, IL 60661
Tel. No.: (312) 463-3360
Fax No.: (312) 345 1778
Email: ruth.mccoy@lewisbrisbois.com

By: Danny L. Worker, Esq. (6195554)
    Dawn L. Johnson, Esq. (6243191)
Tel. No.: (312) 407-9921
Tel. No.: (312) 463-3413
Fax No.: (312) 345-1778
Email: dan.worker@lewisbrisbois.com
Email: dawn.johnson@lewisbrisbois.com

By: James H. Rodgers, Esq. (JR-4798)
77 Water Street, Suite 2100
New York, NY 10005
Tel. No.: (646) 666-7701
Fax No.: (212) 232-1399
Email: james.rodgers@lewisbrisbois.com